1

2

3

4

5

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

6

7

8

KEITH JACOBS, Individually and on Behalf of
All Others Similarly Situated,

9

10

Plaintiff,

11

v.

12

FUNKO, INC., BRIAN MARIOTTI, RUSSELL
NICKEL,    KEN    BROTMAN,    GINO
DELLOMO, CHARLES DENSON, ADAM
KRIGER, RICHARD MCNALLY, DIANE
IRVINE, GOLDMAN SACHS & CO. LLC, J.P.
MORGAN   SECURITIES   LLC,   MERRILL
LYNCH,  PIERCE,  FENNER  &  SMITH
INCORPORATED, PIPER JAFFRAY & CO.,
JEFFERIES LLC, STIFEL, NICOLAUS &
COMPANY,    INCORPORATED,    BMO
CAPITAL    MARKETS    CORP.,    and
SUNTRUST ROBINSON HUMPHREY, INC.,

13

14

15

16

17

18

Defendants.

19

Case No.: DRAFT

**CLASS ACTION**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

20

21

22

23

24

25

26

27

28

Complaint – Page 1

Plaintiff Keith Jacobs ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.   Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Funko, Inc. ("Funko" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Funko; and (c) review of other publicly available information concerning Funko.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired the Class A common stock ("stock" or "shares") of Funko pursuant and/or traceable to the Company's false and/or misleading registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's November 1, 2017 initial public offering ("IPO" or the "Offering"), seeking to pursue remedies under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act").

2.      Funko claims to be a pop culture consumer products company.   Funko purportedly creates licensed toys, collectibles, and other consumer goods, including figures, plush toys, accessories, apparel, and homewares.

3.      On November 3, 2017, the Company filed its IPO prospectus with the SEC, which forms part of the IPO Registration Statement that was declared effective on November 1, 2017.   In the IPO, the Company sold 10,416,666 shares of Class A common stock at a price of $12.00 per share. The Company received proceeds of approximately $116.4 million from the IPO, net of underwriting discounts and commissions.   The proceeds from the IPO were purportedly to be used to purchase common units from FAH, LLC, so that FAH, LLC could use the funds for general corporate purposes, and to repay debt.

4.      On November, 2 2017, *Bloomberg* published an article entitled "Funko Extends Playtime to Its Accounting," stating, among other things, that "[p]rofits . . . are slowing," "just $7 million, or 10 percent, of Funko's $69 million increase in adjusted Ebitda . . . was from actual earnings

Complaint – Page 2

Nelson Boyd, PLLC
411 University Street, Suite  12000
Seattle, WA  98101
(206) 971-7601

1  growth," and questioning the Company's claim of "intellectual property worth $250 million" which

2  the article author claimed was "odd for a company whose main products are based on others'

3  intellectual property."

4       5.      On that day, November 2, 2017, Funko's stock price closed at $7.07 per share, which

5  was a decline of $4.93, or 41%, from the IPO price of $12.00 per share.  On January 5, 2017, Funko's

6  stock price closed at $6.12, which was a decline of $5.88, or 49%, from the IPO price of $12.00 per

7  share.

8       6.      The Registration Statement was materially false and misleading and omitted to state (1)

9  that Funko's profits and growth were not as positive as the Company represented; and (2) that, as a

10  result of the foregoing, Defendants' statements in the Registration Statement regarding Funko's

11  business, operations, and prospects, were materially false and/or misleading.

12  **JURISDICTION AND VENUE**

13       7.      The claims asserted herein arise under and pursuant to Sections 11, 12 and 15 of the

14  Securities Act (15 U.S.C. §§ 77k and 77o).  This Court has jurisdiction over the subject matter of this

15  action pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v.

16       8.      Each Defendant has sufficient contacts with Washington, or otherwise purposefully

17  avails themselves of benefits of Washington or has property in Washington so as to render the

18  exercise of jurisdiction over each by the Washington courts consistent with traditional notions of fair

19  play and substantial justice.

20       9.      This Court has jurisdiction over the subject matter of this action pursuant to Section

21  22 of the Securities Act (15 U.S.C. § 77v).

22       10.    Venue is proper in this Court pursuant to Section 22 of the Securities Act, 15 U.S.C. §

23  77v.  Many of the violations of law complained of herein occurred in this State, including the

24  dissemination of the materially false and misleading statements complained of herein into this State.

25  In addition, many Defendants are residents of, do business in, or maintain offices in this State.

26  **PARTIES**

27       11.    Plaintiff Keith Jacobs purchased Funko securities pursuant and/or traceable to the

28  Complaint – Page 3

Registration Statement issued in connection with the Company's IPO and has been damaged thereby. Defendant Funko, Inc. is a Delaware corporation with its principal executive offices located in Everett, Washington.

12.     Defendant Brian Mariotti ("Mariotti") was, at all relevant times, the Chief Executive Officer ("CEO") and a Director of Funko, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

13.     Defendant Russell Nickel ("Nickel") was, at all relevant times, the Chief Financial Officer ("CFO") of Funko, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

14.     Defendant Ken Brotman ("Brotman") was a Director Funko and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

15.     Defendant Gino Dellomo ("Dellomo") was a Director of Funko and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16.     Defendant Charles Denson ("Denson") was a Director of Funko and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17.     Defendant Adam Kriger ("Kriger") was a Director of Funko and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18.     Defendant Richard McNally ("McNally") was a Director of Funko and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19.     Defendant Diane Irvine ("Irvine") was a Director of Funko and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20.     Defendants Mariotti, Nickel, Brotman, Dellomo, Denson, Kriger, McNally, and Irvine are collectively referred to hereinafter as the "Individual Defendants."

21.     Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") served as an underwriter for the Company's IPO.  In the Offering, Goldman Sachs agreed to purchase 3,283,898 shares of the Company's Class A common stock, exclusive of the over-allotment option.

Complaint – Page 4

22.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO.  In the Offering, J.P. Morgan agreed to purchase 2,736,582 shares of the Company's Class A common stock, exclusive of the over-allotment option.

23.     Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") served as an underwriter for the Company's IPO.  In the Offering, Merrill Lynch agreed to purchase 1,641,949 shares of the Company's Class A common stock, exclusive of the over-allotment option.

24.     Defendant Piper Jaffray & Co. ("Piper Jaffray") served as an underwriter for the Company's IPO.  In the Offering, Piper Jaffray agreed to purchase 826,271 shares of the Company's Class A common stock, exclusive of the over-allotment option.

25.     Defendant Jefferies LLC ("Jefferies") served as an underwriter for the Company's IPO.  In the Offering, Jefferies agreed to purchase 826,271 shares of the Company's Class A common stock, exclusive of the over-allotment option.

26.     Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel") served as an underwriter for the Company's IPO.  In the Offering, Stifel agreed to purchase 550,847 shares of the Company's Class A common stock, exclusive of the over-allotment option.

27.     Defendant BMO Capital Markets Corp. ("BMO") served as an underwriter for the Company's IPO.  In the Offering, BMO agreed to purchase 275,424 shares of the Company's Class A common stock, exclusive of the over-allotment option.

28.     Defendant SunTrust Robinson Humphrey, Inc. ("SunTrust") served as an underwriter for the Company's IPO.  In the Offering, SunTrust agreed to purchase 275,424 shares of the Company's Class A common stock, exclusive of the over-allotment option.

29.     Defendants Goldman Sachs, J.P. Morgan, Merrill Lynch, Piper Jaffray, Jefferies, Stifel, BMO, and SunTrust are collectively referred to hereinafter as the "Underwriter Defendants."

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Funko securities pursuant and/or traceable to the Company's false and/or misleading

Complaint – Page 5

Registration Statement issued in connection with the Company's IPO, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company or its related entities, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31.    The members of the Class are so numerous that joinder of all members is impracticable. During the relevant period, Funko's securities were actively traded on the NASDAQ Stock Market ("NASDAQ"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. The Company sold 10,416,666 shares of Class A common stock in the IPO. Moreover, record owners and other members of the Class may be identified from records maintained by Funko or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants wrongful conduct in violation of federal law that is complained of herein.

33.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

34.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the Securities Act was violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public in connection with the Company's IPO omitted and/or misrepresented material facts about the business, operations, and prospects of Funko; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

Complaint – Page 6

A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

35.     Funko claims to be a pop culture consumer products company.  Funko purportedly creates licensed toys, collectibles, and other consumer goods, including figures, plush toys, accessories, apparel, and homewares.

### The Company's False and/or Misleading

### Registration Statement and Prospectus

36.     On October 23, 2017, Funko filed its final amendment to the IPO Registration Statement with the SEC on Form S-1/A, which forms part of the IPO Registration Statement.  The Registration Statement was declared effective on November 1, 2017.

37.     On November 3, 2017, the Company filed with the SEC its IPO prospectus, which forms part of the IPO Registration Statement. In the IPO, the Company sold 10,416,666 shares of Class A common stock at a price of $12.00 per share.  The Company received proceeds of approximately $116.4 million from the IPO, net of underwriting discounts and commissions.  The proceeds from the IPO were purportedly to be used to purchase common units from FAH, LLC, so that FAH, LLC could use the funds for general corporate purposes, and to repay debt.

38.     The IPO Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

Complaint – Page 7

Under applicable SEC rules and regulations, the IPO Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

With respect to the Company's growth, the Registration Statement stated, in relevant part:

> We have developed a nimble and low-fixed cost production model. The strength of our in-house creative team and relationships with content providers, retailers and third-party manufacturers allows us to move from product concept to pre-selling a new product in as few as 24 hours. We typically have a new figure on the store shelf between 110 and 200 days and can have it on the shelf in as few as 70 days. As a result, we can dynamically manage our business to balance current content releases and pop culture trends with content based on classic evergreen properties, such as Mickey Mouse or classic Batman. This has allowed us to deliver significant growth while lessening our dependence on individual content releases.
>
> Our financial performance reflects the strong growth of our business. From 2014 to 2016, we expanded our net sales, net income and Adjusted EBITDA at a 100%, a 17% and an 86% compound annual growth rate, or CAGR, respectively. We achieved this growth without reliance on a singular "hit" property as no single property accounted for more than 15% of annual net sales during that period. We believe our strong growth and profitability reflect our pop culture consumer products leadership.



39.     With respect to intangible assets, the Registration Statement, in relevant part, stated:

As of December 31, 2016 and 2015, intangible assets, net was composed of the following (in thousands):

Complaint – Page 8

Nelson Boyd, PLLC
411 University Street, Suite  12000
Seattle, WA  98101
(206) 971-7601

| | December 31, 2016 | | |
| --- | --- | --- | --- |
| | Gross Carrying Amount | Accumulated Amortization | Intangible Assets, Net |
| Intangible assets subject to amortization | | | |
| Intellectual property | $ 114,411 | $ (6,674) | $107,737 |
| Trade names | 81,358 | (4,746) | 76,612 |
| Customer relationships | 63,129 | (3,682) | 59,447 |
| Balance as of December 31, 2016 | $258,898 | $ (15,102) | $243,796 |

\*     \*     \*

**Funko Acquisition Holdings, L.L.C. and Subsidiaries**

**Condensed Consolidated Balance Sheets**

**(in thousands, except share amounts)**

| | June 30, 2017 (unaudited) | December 31, 2016 |
| --- | --- | --- |
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 12,752 | $ 6,161 |
| Accounts receivable, net | 81,629 | 83,607 |
| Inventory | 57,982 | 43,616 |
| Prepaid expenses and other current assets | 31,573 | 19,040 |
| Total current assets | 183,936 | 152,424 |
| Property and equipment, net | 35,639 | 25,473 |
| Goodwill | 106,521 | 97,453 |
| Intangible assets, net | 257,991 | 243,796 |
| Other assets | 4,293 | 3,091 |
| **Total assets** | $ 588,380 | $ 522,237 |

40.    The IPO Registration Statement was materially false and misleading and omitted to state: (1) that Funko's profits and growth were not as positive as the Company represented; and (2) that, as a result of the foregoing, Defendants' statements in the Registration Statement regarding Funko's business, operations, and prospects, were materially false and/or misleading.

**The Subsequent Disclosure**

On November, 2 2017, *Bloomberg* published an article entitled "Funko Extends Playtime to Its Accounting," stating, among other things, that "[p]rofits . . . are slowing," "just $7 million, or 10 percent, of Funko's $69 million increase in adjusted Ebitda . . . was from actual earnings growth," and

Complaint – Page 9

questioning the Company's claim of "intellectual property worth $250 million" which the article author (Stephen Gandel) claimed was "odd for a company whose main products are based on others' intellectual property."  In greater part, the article stated:

> Funko, the purveyor of 2017's version of bobble-head dolls, appears to have a big head when it comes to its financial results.
> Shares of the company priced on Wednesday night at $12 and are scheduled to begin trading on Thursday morning. The pricing was below the indicated range of $14 to $16, but even that may have been too high.
> In Funko's IPO prospectus, in a chart with a big arrow pointing up, the company says that an important measure of its income, which it uses to determine the success of its
>
> operational strategies, rose by an average of 86 percent in its past two full years. The actual bottom line, though, was up an average of just 16 percent in 2015 and 2016 and has turned negative lately. Funko lost just more than $10 million in the first half of this year. How the toymaker gets a loss of $10 million to reflect back as an 86 percent earnings increase is the latest example of fun-house accounting on Wall Street.

**Dress Up**

There'a [sic] a big difference between Funko's earnings and what it highlights as growing profits



Source: Funko corporate filings
Based on GAAP net income and Funko's reported "adjusted Ebitda."

Funko's main product, Pop! dolls, is hot. The plastic figures with enlarged heads cost about $10 each and are typically of popular characters from kids' movies or TV shows. But there are also Pop! figures based on athletes and characters from the popular HBO series "Game of Thrones." They have become fixtures at Gamestop and Barnes & Noble. (Full disclosure: My daughter's Pop! collection is nearing the entire population of Hogwarts, with Moana as a visiting student.) Sales of Pop! dolls grew an impressive 34 percent last year.

Nelson Boyd, PLLC
411 University Street, Suite  12000
Seattle, WA  98101
(206) 971-7601

1
2
3
4

The question is how profitable the $10 figures are, if at all. Funko arrives at its 86 percent compounded annual earnings growth rate by focusing on a figure that more and more companies point their shareholders to called adjusted Ebitda, which excludes a number of costs. Each company computes the figure slightly differently, which is why many accounting experts hate it, but companies like Funko say it is a better measure of their operations. Let's see.

5

**Party's Over**

6

Profits at toy maker Funko, even by its preferred measure, are slowing

7
8
9
10
11
12
13
14



Source: Corporate filings

2017 is through June 30. Adjusted Ebitda is as defined by Funko in its S-1 statement.

15
16
17
18
19
20
21
22
23

Funko says it had $97 million in adjusted Ebitda earnings in 2016, up from just $28 million in 2014, an increase of $69 million. How did it manage that increase? Two years ago, Funko was sold to a private equity firm. Funko says acquisitions are a one-time expense, even though it says it plans to do more deals in the future. Nonetheless, exclude those costs, and the company's adjusted Ebitda jumps nearly $25 million. Funko also contends it has intellectual property worth $250 million. That's odd for a company whose main products are based on others' intellectual property. Anyway, the company stepped up write-offs of that intellectual property last year. Depreciation costs rose $19.5 million. But Funko says that cost is not part of its operations and excludes it from its adjusted Ebitda, causing that figure to rise once again. Funko has also piled on debt in the past two years, in part because of its private equity ownership. Interest expense rose $14.5 million, which is also excluded from adjusted Ebitda. You get the picture; the higher cost is reflected back as better earnings once it's excluded.

24
25
26

The result, just $7 million, or 10 percent, of Funko's $69 million increase in adjusted Ebitda -- which led to that 86 percent increase in growth from 2014 to 2016 -- was from actual earnings growth. The other 90 percent came from higher costs that the company says investors should just ignore. Funko Pop! dolls are based on fantasy. Its accounting shares a similar trait.

27
28

Complaint – Page 11

Nelson Boyd, PLLC
411 University Street, Suite  12000
Seattle, WA  98101
(206) 971-7601

41.     On that day, November 2, 2017, Funko's stock price closed at $7.07 per share, which was a decline of $4.93, or 41%, from the IPO price of $12.00 per share.  On January 5, 2017, Funko's stock price closed at $6.12, which was a decline of $5.88, or 49%, from the IPO price of $12.00 per share.

**FIRST CLAIM**
**Violation of Section 11 of the Securities Act**
**(Against All Defendants)**

42.     Plaintiff repeats and re-alleges each and every allegation contained above.

43.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants (the "Section 11 Defendants").

44.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

45.     Funko is the registrant for the IPO.  The Section 11 Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

46.     As issuer of the shares, Funko is strictly liable to Plaintiff and the Class for the misstatements and omissions.

47.     None of the Section 11 Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

48.     By reasons of the conduct herein alleged, each Section 11 Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

49.     Plaintiff acquired Funko shares pursuant and/or traceable to the Registration Statement for the IPO.

50.     Plaintiff and the Class have sustained damages.  The value of Funko Class A common stock has declined substantially subsequent to and due to Section 11 Defendants violations.

Complaint – Page 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND CLAIM**
**Violation of Section 12(a)(2) of The Securities Act**
**(Against All Defendants)**

51.     Plaintiff repeats and re-alleges each and every allegation contained above, except any allegation of fraud, recklessness or intentional misconduct.

52.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act, on behalf of the Class, against all Defendants (the "Section 12 Defendants").

53.     The Section 12 Defendants were sellers, offerors, and/or solicitors of purchasers of Class A common stock offered by Funko pursuant to the IPO.  The Section 12 Defendants issued, caused to be issued, and/or signed the IPO Registration Statement in connection with the Offering. The IPO Registration Statement was used to induce investors, such as Plaintiff and other members of the Class, to purchase Funko securities.

54.     The IPO Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

55.      The Section 12 Defendants' actions of solicitation included participating in the preparation of the false and/or misleading IPO Registration Statement.

56.     None of the Section 12 Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the IPO Registration Statement were true and without omissions of any material facts and were not misleading.

57.     Plaintiff and other Class members did not know, nor could they have known, of the untruths and/or omissions contained in the IPO Registration Statement and Secondary Registration Statement.

58.     By virtue of the conduct alleged herein, the Section 12 Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

Complaint – Page 13

**THIRD CLAIM**
**Violation of Section 15 of The Securities Act**
**(Against the Individual Defendants)**

59.     Plaintiff repeats and re-alleges each and every allegation contained above.

60.     This count is asserted against the Individual Defendants (the "Section 15 Defendants") and is based upon Section 15 of the Securities Act.

61.     The Section 15 Defendants, by virtue of their offices, directorship and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Funko within the meaning of Section 15 of the Securities Act.  The Section 15 Defendants had the power and influence and exercised the same to cause Funko to engage in the acts described herein.

62.     The Section 15 Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

63.     By virtue of the conduct alleged herein, the Section 15 Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Federal Rule of Civil Procedure Rule 23;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d)     Awarding rescission or a rescissory measure of damages; and

(e)     Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Complaint – Page 14

Nelson Boyd, PLLC
411 University Street, Suite  12000
Seattle, WA  98101
(206) 971-7601

1  Dated: April 2, 2018

2

3                                 NELSON BOYD, PLLC

4

5                                 _____/s/Deborah M. Nelson_____
                                  DEBORAH M. NELSON, WSBA #23087
6                                 nelson@nelsonboydlaw.com

7

8                                 _____/s/Jeffrey D. Boyd_____
                                  JEFFREY D. BOYD, WSBA #41620
9                                 boyd@nelsonboydlaw.com

10                                Nelson Boyd, PLLC
                                  411 University Street
11                                Suite 1200
                                  Seattle, WA  98101
12                                206.971.7601

13

14

15                                **GLANCY PRONGAY & MURRAY LLP**
                                  Robert V. Prongay (*pro hac vice forthcoming*)
16                                Lesley F. Portnoy (*pro hac vice forthcoming*)
                                  1925 Century Park East, Suite 2100
17                                Los Angeles, CA 90067
                                  Telephone:  (310) 201-9150
18                                Facsimile:  (310) 201-9160

19                                **LAW OFFICES OF HOWARD G. SMITH**
                                  Howard G. Smith (*pro hac vice forthcoming*)
20                                3070 Bristol Pike, Suite 112
                                  Bensalem, PA 19020
21                                Telephone: (215) 638-4847
                                  Facsimile: (215) 638-4867
22
                                  *Attorneys for Plaintiff*
23

24

25

26

27

28  Complaint – Page 15